**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**RONALD ROGERS and LISA**
**A. ROLES  ROGERS,**                                    **1:01-CV-352 (lead)**[1]
                                                          **1:02-CV-1023 (member)**
                    **Plaintiffs,**                       **(GLS/RFT)**


                              **v.**

**WESTFALIA ASSOCIATED**
**TECHNOLOGIES, INCORPORATED;**
**PORTEC, INC.,**

                    **Defendants.**
_____

**WESTFALIA ASSOCIATED**
**TECHNOLOGIES, INCORPORATED,**

                              **Third-Party Plaintiff,**

                    **v.**

**PORTEC, INC. and PROBEC, INC.,**

                              **Third-Party Defendants.**
_____

**PROBEC, INC.,**

                              **Third-Party Plaintiff,**

---

[1]This is the lead docket number.  There were originally two cases (case numbers 1:01-cv-352 and 1:02-cv-1023), and they were consolidated on May 28, 2003.  *See Dkt. No. 34.*

**v.**

**MILL TECHNOLOGY, INC.,**

**Third-Party Defendant.**[2]

_____

| | |
|---|---|
| **APPEARANCES:** | **OF COUNSEL:** |

**FOR THE PLAINTIFFS:**

| | |
|---|---|
| CADE, SAUNDERS LAW FIRM<br>4 Pine Street<br>Albany, New York 12207 | WILLIAM J. CADE, ESQ. |

**FOR THE DEFENDANTS/
THIRD-PARTY PLAINTIFF:**

| | |
|---|---|
| **For Westfalia Associated<br>Technologies, Inc.**<br>EUSTACE, MARQUEZ LAW FIRM<br>1311 Mamaroneck Avenue<br>White Plains, New York 10605 | JOHN R. MARQUEZ, ESQ. |

| | |
|---|---|
| **For Portec, Inc.**<br>CARTER, CONBOY LAW FIRM<br>20 Corporate Woods Boulevard<br>Albany, New York 12211 | EDWARD D. LAIRD, JR., ESQ. |

**FOR THE THIRD-PARTY
DEFENDANTS/ THIRD-PARTY
PLAINTIFF:**

---

[2]On November 28, 2006, Probec, Inc., Westfalia Associates Technologies, Inc., and Mill Technologies, Inc. agreed to dismiss their claims for relief against New England Millwrights, Inc.  *See Dkt. Nos. 138, 139.*  Accordingly, by stipulation of dismissal, New England Millwrights, Inc. is no longer a party to this lawsuit.

**For Probec, Inc.**
PINO AND ASSOCIATES                    RUDOLPH V. PINO, JR., ESQ.
Westchester Financial Plaza
50 Main Street, 7th Floor
White Plains, New York 10606

**For Mill Technology, Inc.**
DEGRAFF, FOY LAW FIRM                  TERRENCE J. DEVINE, ESQ.
90 State Street
Albany, New York 12207

**Gary L. Sharpe**
**U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

After falling nine feet to the ground while performing service on a

stationary conveyor system, Ronald Rogers and his wife, Lisa Rogers,

allege that Westfalia Associated Technologies, Inc. and Portec, Inc.

negligently designed the conveyor belt system at the Agway Feed Mill

located in Guilderland, New York.[3]  The remainder of the parties sue each

other for contribution and indemnification.

---

[3]Ronald and Lisa Rogers assert the following causes of action against Westfalia
Associated Technologies, Inc. and Portec, Inc.: (1)  Negligence; (2) Negligent design; (3)
Negligent manufacture; (4) Failure to Warn; (5) Breach of Warranty; (6) Strict Products Liability;
and (7) Loss of consortium.
       The court's jurisdiction for the Rogers' complaint is based upon diversity of citizenship
pursuant to 28 U.S.C. § 1332.  The Rogers seek 10 million dollars on the first six causes of
action and 1 million dollars on the seventh cause of action, together with interest and costs.

After Westfalia Associated Technologies, Inc.; Probec, Inc.; Portec, Inc.; and Mill Technology, Inc. filed individual motions for summary judgment pursuant to Federal Rule of Civil Procedure 56, *see Dkt. Nos. 111, 114, 115, 123*, the court held a hearing on November 28, 2006.  At that hearing, the parties presented oral arguments, and the court reserved decision.  *See Dkt. No. 137.*  As such, the motions for summary judgment made by Westfalia Associated Technologies, Inc.; Probec, Inc.; Portec, Inc.; and Mill Technology, Inc. are still pending.  For the reasons that follow, all motions are granted.

## II.  Facts

The material undisputed facts are the following.  Probec, Inc. designed and developed plans for a new conveyor system to replace the existing conveyor and bagging system at Agway Feed Mill in Guilderland, New York.  *See Westfalia SMF ¶ 5*; *Dkt. No. 111.*  After reviewing Probec's drawings, Westfalia,[4] a manufacturer of straight conveyors, purchased curved conveyors for the Agway project from Portec, Inc., a manufacturer of curved conveyors.  *See id. ¶¶ 6-10.*  Westfalia provided the conveyor system, consisting of both straight and curved conveyors, to Agway

---

[4]Westfalia's contract was with Probec alone.  *See Westfalia SMF ¶ 12; Dkt. No. 111.*

pursuant to Probec's plans.  *See id. ¶¶ 11-12.*  Agway was fully aware of its

option to purchase safety equipment, but declined to do so.  *See*

*Williamson Depo. pp. 71-76*; *Dkt. No. 111, see also Rogers Depo. pp.158-*

*65; Dkt. No. 111.*  The conveyor system was installed at Agway by New

England Mill Wrights, Inc. (NEM).  *See Westfalia SMF ¶ 15; Dkt. No. 111.*

Mill Technologies, Inc. contracted with NEM to install the bagging bins in

the tower.[5]  *See NEM SMF ¶ 34; Dkt. No. 120.*

The conveyors had warning labels, explaining the dangers of

climbing, sitting, walking, or riding on the conveyor*.  See id. ¶ 23.*  Aware of

the existence of the warning stickers, Rogers, who had worked in the

maintenance department at Agway since 1977, had previously spoken to

Agway about his concerns regarding the lack of catwalks or fallout

protection devices at elevated portions of the conveyor belt.  *See Westfalia*

*SMF ¶¶ 4, 24-26; Dkt. No. 111.*

On August 16, 1999, while assisting his co-worker, Paul Riscavage,

in the replacement of a conveyor belt, Rogers used a latter to climb onto

---

[5]Pointing to the permit application, Probec adds that the town of Guilderland considered Mill Technology, Inc. to be the "architect or engineer" on the Agway project.  *See Probec SMF ¶ 8; Dkt. No. 128.*

the elevated conveyor system.[6]  *See Westfalia SMF ¶ 16; Dkt. No. 111.*

The conveyor belt was stationary, and Rogers was standing near a curved

conveyor.  *See id. ¶ 19.*  He took a step backward, fell off the curved

conveyor, and fell nine feet to the concrete floor below.  *See id. ¶¶ 20, 21.*

As a result of the fall, Rogers suffered amnesia and paralysis in his lower

body.  *See Rogers SMF ¶ 15; Dkt. No. 124.*

## III.  Discussion

## A.    Motion for Summary Judgment Standard

Summary judgment shall be granted "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (citing FED. R.

CIV. P. 56(c)); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d

165,170 (2d Cir. 2006) (citation omitted).  All reasonable inferences must

be drawn in favor of the nonmoving party.  *See Allen v. Coughlin,* 64 F.3d

77, 79 (2d Cir.1995).  The moving party "bears the initial responsibility of

---

[6]Although Rogers had used a ladder to access the conveyor belt many times prior to the accident, he had never been formally trained by Agway to perform maintenance work on conveyors.  *See Westfalia SMF ¶ 17, Dkt. No. 111.*

informing the district court of the basis for its motion, and identifying those

portions of 'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact."  *Celotex*

*Corp. v. Catrett*,  477 U.S. 317, 323 (1986) (citation omitted); *see also*

*SEC. v. Kern*, 425 F.3d 143, 147 (2d Cir. 2005).  "A 'genuine' dispute over

a material fact only arises if the evidence would allow a reasonable jury to

return a verdict for the nonmoving party."  *Dister v. Cont'l Group, Inc.*, 859

F.2d 1108, 1114 (2d Cir. 1988) (citation omitted).  However, "[c]onclusory

allegations, conjecture and speculation...are insufficient to create a genuine

issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

## B.    The Motions

All of the movants proffer the same legal argument.  In essence, they

maintain that they are entitled to judgment as a matter of law and dismissal

of the complaint because there is no evidence of wrong on any of their

parts, and in most of their cases, not even specific allegations of wrong.

Moreover, Westfalia Associated, Inc. and Portec, Inc. maintain that they

owed no duty to Ronald Rogers and that, alternatively, any legal obligation

owed by them was satisfied by their warning, posted prominently on the

conveyor system.  For the reasons that follow, the complaint and cross-

complaints are dismissed in their entirety.

### 1.    Westfalia Associated, Inc. and Portec, Inc.[7]

Westfalia Associated, Inc., the manufacturer of the straight conveyor

part, and Portec, Inc., the manufacturer of the curved conveyor part, argue

that there is no evidence of any kind establishing their liability for Rogers'

injuries.  Moreover, they claim that they owed no duty to Rogers beyond

that which they satisfied by posting a conspicuous warning on the conveyor

system.  Finally, they argue that their products were not defective in any

way since they were produced according to Agway's specifications and

worked properly and for their intended purpose.

In their complaint, the Rogers allege that Westfalia and Portec

defectively designed and manufactured the conveyor system and breached

their duty in the design, manufacture, and installation of the overhead

conveyor system.[8]  Specifically, the Rogers allege that the conveyor

---

[7]Portec argues that its summary judgment motion should be granted because the Rogers' opposition papers focus solely on Westfalia's motion for summary judgment and fail to dispute or mention Portec's arguments. Portec also argues that it was not provided with designs or specifications of the overall conveyor system because it merely provided parts to Westfalia in accordance with a purchase order.  As such, Portec claims it is entitled to summary judgment.

[8]Generally, New York law requires that a plaintiff in a negligence action establish that: (1) the defendant owed it a cognizable duty of care; (2) the defendant breached such duty; and (3) the plaintiff suffered damages as a proximate result of this breach.  *See Solomon v. City of*

system lacked adequate warnings and safety equipment, such as

scaffolding, staging, or ladders.  Westfalia and Portec argue that they

should not be held liable because they manufactured the conveyor

component parts in accordance with Agway's design and specifications

and that the designs and specifications did not reveal any inherent danger

in the component parts or the assembled unit.  *See Leahy v. Mid-West

Conveyor Co.*, 120 A.D.2d 16 (3d Dep't 1986).[9]

In New York, "[i]n a design defect case, there is almost no difference

between a *prima facie* case in negligence and one in strict liability."  *Bah v.

Nordson Corp.*, 00-CV-9060, 2005 U.S. Dist. LEXIS 15683, at *38-39

(S.D.N.Y. Aug. 1, 2005).  Thus, to prevail on a negligence or strict liability

claim based on a design defect, a New York plaintiff must prove that: (1)

the product as designed was not reasonably safe for its intended use; and

(2) the defective design was a substantial factor in causing the plaintiff's

---

*New York*, 66 N.Y.2d 1026, 1027 (1985).  "The essence of [a negligent manufacturing] claim is that a product did not perform as intended because it was misconstrued." *David v. Makita U.S.A., Inc.*, 233 A.D.2d 145, 151 (1st Dep't 1996).

[9]The *Leahy* court found that where the defendant manufactured parts in accordance with specific designs and specifications provided to it by a third party, the defendant could not be expected to "anticipate safety features appropriate for the entire conveyor system." *Leahy v. Mid-West Conveyor Co.*, 120 A.D.2d 16, 18 (3d Dep't 1986).  Westfalia maintains that all it did was manufacture straight conveyors, and Agway was in the best position to decide whether to purchase optional safety devices.

injuries.[10]  *See Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 106

(1983).  An actionable defect is one that arises from: (1) a mistake in the

manufacturing process, (2) an improper design of the product, or (3) a

failure by the manufacturer to provide adequate warnings regarding the use

of the product.  *See id.* at 106-107.

In considering whether the design of a product is defective, courts

consider the following factors: "(1) the product's utility to the public as a

whole, (2) its utility to the individual user, (3) the likelihood that the product

will cause injury, (4) the availability of a safer design, (5) the possibility of

designing and manufacturing the product so that it is safer but remains

functional and reasonably priced, (6) the degree of awareness of the

product's potential danger that can reasonably be attributed to the injured

user, and (7) the manufacturer's ability to spread the cost of any safety-

related design changes."  *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 257

(1995).

"Where a court, after considering the relevant facts and risk-utility

---

[10]In addition, a plaintiff must establish "(1) that at the time of the occurrence, the product was being used for the purpose and in the manner normally intended; (2) that if the injured party himself was the user of the product, he would not by the exercise of reasonable care have both discovered the defect and perceived its danger; and (3) that by the exercise of reasonable care, the person damaged would not otherwise have averted his damages."  *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 106 (1983).

factors, determines that the plaintiff has failed to make out a *prima facie*

case of a design defect, the claim should not be submitted to the jury."

*Scarangella v. Thomas Built Buses, Inc.*, 93 N.Y.2d 655, 659 (1999).  Only

after determining that the plaintiff has established a *prima facie* case, the

jury must "decide whether a product was not reasonably safe in light of all

the evidence presented by both the plaintiff and defendant."[11]   *Voss*, 59

N.Y.2d at 110.

Finally, when, as here, a plaintiff claims that the product is defective

because it was installed without an optional safety feature, the product is

not defective where:

> (1) the buyer is thoroughly knowledgeable regarding the product and
> its use and is actually aware that the safety feature is available; (2)
> there exist normal circumstances of use in which the product is not
> unreasonably dangerous without the optional equipment; and (3) the
> buyer is in a position, given the range of uses of the product, to
> balance the benefits and the risks of not having the safety device in

---

[11]   The plaintiff, of course, is under an obligation to present evidence that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner. The defendant manufacturer, on the other hand, may present evidence in opposition seeking to show that the product is a safe product -- that is, one whose utility outweighs its risks when the product has been designed so that the risks are reduced to the greatest extent possible while retaining the product's inherent usefulness at an acceptable cost.  The question for the jury, then, is whether after weighing the evidence and balancing the product's risks against its utility and cost, it can be concluded that the product as designed is not reasonably safe.

*Voss*, 59 N.Y.2d at 110.

the specifically contemplated circumstances of the buyer's use of the product.  In such a case, the buyer, not the manufacturer, is in the superior position to make the risk-utility assessment, and a well-considered decision by the buyer to dispense with the optional safety equipment will excuse the manufacturer from liability.

*Scarangella*, 93 N.Y.2d at 661.  In other words, when all of the circumstances are such, the manufacturer owed no legal duty to the end user of a product that was purchased by another party who assessed the risks associated with regular use of the product and decided not to purchase optional safety equipment.  When this "no duty" rule applies, the buyer fully comprehended the risks associated with regular use of the product, contemplated the option of purchasing safety equipment, and made the affirmative decision not to purchase the safety equipment.  "When the factors are not present, there is no justification for departure from the accepted rationale imposing strict liability upon the manufacturer because it is in the superior position to discover any design defects."  *Id.*

Here, Westfalia claims that it approached Agway about purchasing safety equipment.  Westfalia maintains that, as the employer and the purchaser of the conveyor system, Agway was the party in the best position to protect from this kind of accident.  As such, Westfalia claims that because Agway failed to purchase the optional fall-out safety protection, it,

not Westfalia, is the party at fault here.  The court concurs with Westfalia's

argument.  Indeed, Agway was in the best position to make the risk-utility

assessment because Agway had purchased identical products in the past

and best understood the risks associated with the use of the conveyor

component parts and the completed conveyor system.  In accessing these

things, and when presented with the opportunity to do so, Agway declined

to purchase the optional fall-out safety protection.  Therefore, Agway, not

Westfalia or Portec, is the party most likely responsible here.

While the court is not unsympathetic with Ronald Rogers' severe and

established injury, it is unfortunately unable to find the potential for liability

on any of the named defendants' parts.  As stated, Agway, not the named

defendants, is the party most likely responsible here.  Unfortunately, and

for reasons outside of the court's and the parties' control, Agway is not a

party to the instant lawsuit.  However, to hold the named defendants liable

in substitution for the appropriate party here would be unjust.

Moreover, even if Westfalia or Portec were appropriately named

parties to this litigation, the Rogers are unable as a matter of law to assert

a claim against either of them based upon any of their alleged theories of

recovery.[12]  Although the Rogers allege numerous claims against Westfalia

and Portec, the manufacturers of the conveyor parts, their basic theory of

recovery is that the aforementioned parties failed to adequately warn of the

risk associated with maintaining a raised conveyor system.

To make out a *prima facie* case for negligent failure to warn under

New York law, "a plaintiff must show that (1) the manufacturer had a duty

to warn;[13] (2) the manufacturer breached[14] such duty so that the product is

rendered defective, i.e. reasonably certain to be dangerous; (3) the defect

was the proximate cause of the plaintiff's injury; and (4) that the plaintiff

suffered loss or damage." *Bah*, 2005 U.S. Dist. LEXIS 15683, at *42.  A

---

[12]The only other potential claim not discussed within the body of the opinion is Rogers' claim against defendants for breach of warranty.  A breach of warranty claim "does not involve a risk-benefit analysis but instead requires an inquiry only into whether the product in question was fit for the ordinary purposes for which it is used." *Bah v. Nordson Corp.*, 00-CV-9060, 2005 U.S. Dist. LEXIS 15683, at *39 (S.D.N.Y. Aug. 1, 2005).  "Recovery may in turn be had upon a showing that the product was not minimally safe for its expected purpose- without regard to the feasibility of alternative designs or the manufacturer's reasonableness in marketing it in that unsafe condition." *Id.*  "Thus, while there is clearly a high degree of overlap between the breach of implied warranty and strict liability/negligence causes of action for design defect, it is possible to be liable for breach of implied warranty even though a claim of strict liability has not been satisfactorily established." *Id.*  Here, again, the party in the best position to protect against the risk associated with maintaining the raised conveyor system was Agway, not either of the named defendants.  Accordingly, and because the product, namely, the conveyor parts manufactured by the defendants, was fit for its ordinary purpose for which is was used, the breach of warranty claim is dismissed.

[13]"A manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known, including the danger of unintended uses...provided these uses are reasonably foreseeable." *Bah*, 2005 U.S. Dist. LEXIS 15683, at *42-43.

[14]The duty to warn is breached "either by the complete absence of warnings as to a particular hazard or the inclusion of warnings which are insufficient." *Id.* at 43.

14

warning should clearly alert the user to avoid certain uses of the product which would appear to be normal and reasonable.  *See id.*  In making the adequacy determination, courts have weighed factors such as "the degree of danger and type of product involved."  *Bah*, 2005 U.S. Dist. LEXIS 15683, at \*43.

There are two situations in which failure to warn claims are barred as a matter of law: "(1) where the injured party was fully aware of the hazard through general knowledge, observation or common sense; and (2) where the danger at issue falls within the limited class of hazards [that] need not be warned of as a matter of law because they are patently dangerous or pose open and obvious risks."  *Id*. at 44.  In both of these scenarios, the duty to warn is effectively vitiated by the factual circumstances.  Here, both of these exceptions apply.  First, Rogers was fully aware of the dangers involved in maintaining the raised conveyor system.  In fact, Rogers had performed maintenance on the raised conveyor system numerous times prior to his fall, and he discussed the installation of safety equipment with Agway management, suggesting to them that the very part of the conveyor system where he ultimately fell was inherently dangerous.  Second, the danger at issue, namely, the danger of falling nine feet to the ground while

15

performing service on a raised conveyor system, falls within the limited class of hazards that are open and obvious and need not be warned of as a matter of law.  Any reasonable person, when performing maintenance on a platform raised nine feet in the air, would recognize that an inherent danger exists.  In this case, Rogers himself acknowledged the patent danger when he discussed the purchase of safety equipment with Agway management.

Under these circumstances, Westfalia and Portec had no legal duty to warn Rogers of the danger involved in maintaining the raised conveyor system.  Even so, any potential limited duty owed by Westfalia or Portec had previously been satisfied when Westfalia advised Agway of the option of purchasing safety products.  Moreover, they placed a clear and concise warning on the parts themselves.[15]  Based on these undisputed facts, and based upon Rogers' own awareness of the risk involved in performing

---

[15]Westfalia and Portec cite the ANSI, the conveyor industry standards, in support of their assertion that the industry does not require a manufacturer of conveyors to provide height related safety measures as part of a conveyor system.  While this fact is certainly persuasive, it is not dispositive.  "While compliance with industry standards is certainly not dispositive of a design defect claim grounded in strict products liability, and would also be insufficient to support summary judgment, such evidence should be admissible at trial.  Compliance with industry standards may be relevant to the question of whether a product was reasonably safe as designed, and with respect to the feasibility of alternative designs."  *Church Insurance Co. v. Trippe Mfg. Co.,* 04-CV-6111, 2005 U.S. Dist. LEXIS 23764, at *6 (S.D.N.Y. Oct. 17, 2005).

maintenance on a raised conveyor system,[16] Westfalia and Portec owed no

duty to Rogers.  In the alternative, they satisfied any potential legal duty

and cannot be held liable here.  Accordingly, Rogers' claims against

Westfalia and Portec are dismissed in their entirety.

### 2.    Mill Tech, Inc. and Probec, Inc.

Mill Tech, Inc.[17] and Probec, Inc. have been joined in this lawsuit

based on theories of contribution and/or indemnification.[18]  The parties

---

[16]Westfalia and Portec argue that they are not liable because Rogers assumed the risk of his injuries when he elected to perform maintenance work on the conveyor belt without height protection.  While this argument is duly-noted, it is simply another argument that these parties owed no duty to Rogers.  New York's comparative negligence statute provides for contributory negligence and assumption of the risk.  *See* N.Y. C.P.L.R. § 1411.  Assumption of the risk is either express or implied.  "Express assumption of the risk...[is] defined as an 'agreement in advance that defendant need not use reasonable care for the benefit of plaintiff and would not be liable for the consequence of conduct that would otherwise be negligent.'" *Integrated Waste Services, Inc. v. Azko Nobel Salt, Inc.*, 113 F.3d 296, 298 (2d Cir. 1997).  Implied assumption of the risk may exist when a plaintiff voluntarily encounters a risk emanating from a defendant's conduct with a full understanding of the possible harm to himself and unreasonably consents to the risk under the circumstances.  *See id.*

While the parties may be correct in asserting that Rogers was partly negligent for his own injuries, the court need not consider this issue since it concludes that defendants owed no duty to Rogers in the first place.

[17]Mill Tech argues that Probec has constructively abandoned its claim against Mill Tech because Kent Williamson, Probec's owner, stated that no "aspect of the design provided by Mill Tech was defective or inadequate in any way."  *See Dkt. No. 111, Ex. E.*

[18]The parties argue that they may not be held liable for contribution because they owed no duty to the plaintiff.  Indeed, the existence of some form of tort liability is a prerequisite to a contribution claim.  *See Trump Vill. Section 3, Inc. v. N.Y.S. Housing Finance Agency*, 307 A.D.2d 891, 896 (N.Y. App. Div. 2003).  Likewise, in order to pursue a claim for indemnification against any of the third-party defendants, there must be either a written contract or a relationship between the parties to justify liability.  "In New York, indemnification claims must be grounded in contract [-] either express or implied." *Carr v. Weinig, AG*, 5:01-CV-1514, 2006 U.S. Dist. LEXIS 57227, at *11 (N.D.N.Y. Aug. 14, 2006) (Munson, J.).  Accordingly, because none of the parties can show a legal duty, independent of a contract, owed by Mill Tech, the claims for contribution and indemnification against Mill Tech are dismissed

suing Mill Tech and Probec do not assert specific allegations of wrong.

Moreover, because the claims supporting the counter-claims and cross-

claims for contribution and/or indemnification are dismissed, the claims

contingent upon them also cannot survive.  Accordingly, the cross-claims

and counter-claims against Mill Tech and Probec are dismissed.[19]

## V.  Conclusion

Upon careful consideration of the parties' submissions, their oral

arguments, and the relevant law, the court concludes that there is no basis

in law or fact for Rogers' claims against defendants, Westfalia and Portec.

As such, the counter-claims and cross-claims against Mill Tech and Probec

for contribution and/or indemnification also cannot survive.  Accordingly,

the motions for summary judgment are **GRANTED**, and the complaint,

counter-claims, and cross-claims are **DISMISSED** in their entirety.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motions for summary judgment are

**GRANTED**; and it is further

---

[19]In support of its contention that there is no evidence of wrong on their parts, Mill Tech cites various expert reports filed on behalf of the Rogers and Probec, Inc.  Stephen Derbey is Rogers' expert, and James H. Somerset is Westfalia's expert.  The gist of their testimony is that the industry standard does not require the installation of fallout safety protection.  Mill Tech cites the expert reports as evidence that it is not even mentioned by any of the experts as participating in the actionable conduct.

**ORDERED** that the Rogers' complaint is **DISMISSED**; and it is further

**ORDERED** that the counter-claims and cross-claims are

**DISMISSED**; and it is further

**ORDERED** that the Clerk provide a copy of this Decision and Order

to the parties.

**IT IS SO ORDERED.**

April 30, 2007
Albany, New York

Gary L. Sharpe
U.S. District Judge